UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIKE CVETKO, | : | |
|     Plaintiff | : | NO.: 1:09-CV-01260 |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| DERRY TOWNSHIP POLICE | : | |
| DEPARTMENT, BRIAN K. GRUBB, | : | |
| MICHAEL HENRY, TODD HARRER, | : | |
| JOHN DOE, HERSHEY | : | |
| ENTERTAINMENT & RESORTS, and | : | |
| ROBERT MEALS, | : | |
|     Defendants | : | |

## **MEMORANDUM & ORDER**

Pursuant to an Order entered on August 4, 2010 (Doc. 54), Honorable Christopher Conner referred defendant's pending motion for sanctions (Doc. 41) to the undersigned Magistrate Judge.

**I. Background**

Before the court is defendant Hershey Entertainment & Resorts (HE&R) and defendant Robert Meals' (together, "defendants") motion for sanctions against plaintiff Mike Cvetko and his attorney Robert Mirin, seeking an award of costs and attorney's fees for alleged violations of Federal Rule of Civil Procedure 11.

The facts and procedural history of this case have been well laid out in a prior memorandum of the Court (Doc. 39, at 1–2), and will only be briefly reviewed here. Starting on April 14, 2007, Cvetko had taken to protesting the Hershey Company every Saturday by displaying signs while standing in the median of a road near the Hersheypark amusement park, which is owned by HE&R. On July 7, 2007, defendant Meals, a security officer with HE&R, apparently noticed Cvetko's presence and allegedly notified the local

authorities, the Derry Township police, that there was a man along the roadway protesting the Hershey Company practices. Officers arrived at the scene and ordered Cyetko to leave the median, which he refused; the officers arrested him.

Cvetko initiated this action on July 1, 2009, by filing a complaint (Doc. 1), which he amended (Doc. 5) and amended again (Doc. 16), each time in response to motions to dismiss from defendants (Docs. 3, 10). After defendants moved (Doc. 17) to dismiss the second amended complaint and the court granted the motion (Doc. 39), plaintiff moved to amend his complaint for a third time (Doc. 47), which the Court denied (Doc. 52) as failing to cure the defects that led to dismissal before.

Defendants' motion for sanctions (Doc. 41), filed May 10, 2010, is now before the court; a brief in support (Doc. 45) was filed on May 24 and a brief in opposition (Doc. 46) on June 5, making the motion ripe for adjudication.

**II. Standard of Review**

Federal Rule of Civil Procedure 11 provides for the imposition of sanctions upon an attorney or party for the filing of a claim or motion that is "patently unmeritorious or frivolous." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 175 (3d Cir. 1993) (citing *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)). The Rule provides, in part:

> (b) Representations to the Court.
> By presenting to the court a pleading, written motion, or other paper . . . an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically

> identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11. A court tests conduct under Rule 11 for "reasonableness under the circumstances." *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988). This inquiry concerns reasonableness not at the time that a Rule 11 motion is filed, but at the time that the challenged "pleading, motion, or other paper was submitted." *Epstein*, 10 F.3d at 175 (quoting Fed R. Civ. P. 11, Notes of Advisory Comm. on 1983 Amends.). Accordingly, if, "under an objective standard, the signer made a reasonable inquiry both as to the fact and the law at the time a document was submitted, subsequent developments showing that the signer's position was incorrect will not subject the signer to Rule 11 sanctions for having submitted the document." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994). But if an attorney failed "competently to research the law before filing," sanctions may be appropriate.

Rule 11 sanctions are generally appropriate only in the "exceptional circumstance" that a claim, motion, or other paper "has absolutely no chance of success," although a finding of the signer's bad faith is not required. *Doering*, 857 F.2d at 194 (citing *Gaiardo*, 835 F.2d at 483; *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)). A finding of frivolousness is a prerequisite to any imposition of sanctions. *Id.* at 195. Once a court finds a violation of Rule 11, the imposition of sanctions is mandatory. *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 83 (E.D. Pa. 1992) (citing *Cooter & Gell*, 496 U.S. 384, 393 (1990); *Perkins v. Gen. Motors Corp.*, 129 F.R.D. 655, 658 (W.D. Mo. 1990); *Matthews v. Freedman*, 128 F.R.D. 194, 206 n.3 (E.D. Pa. 1989)).

**III. Discussion**

At the outset, the Court notes that plaintiff argues that the motion for sanctions must be deemed withdrawn for defendant's failure to timely file a supporting brief. He claims that Local Rule 7.5 requires supporting briefs to be filed within ten days. But where plaintiff got this inexplicably, plainly, and bizarrely incorrect reading of Local Rule 7.5 is a mystery that likely will never be solved. Local Rule 7.5 clearly states that supporting briefs must be filed within fourteen days—not ten—and as defendant's motion (Doc. 41) was filed on May 10, 2010 and the supporting brief (Doc. 46) was filed on May 24, 2010, plaintiff's argument fails.

The claims that defendants challenge as frivolous are plaintiff's claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights; his claim under § 1985(3) for a conspiracy among defendants, the Derry Township Police department, and certain of its officers, to deprive him of his civil rights; and parallel claims under the Pennsylvania Constitution.[1]

Because the Court has already dismissed all of plaintiff's claims against defendant (Doc. 39, at 14–15), there is no need to reinvestigate the question of whether the claims had merit. Instead, the purpose of the discussion is to determine whether it was reasonable under the circumstances for Cvetko, and Attorney Mirin on his behalf, to make the claims that they did. If Cvetko or Mirin failed to make a reasonable inquiry into the facts of the claims or their legal underpinnings, one or both of them has violated Rule 11.

---

[1] Since Cvetko's claims under the Pennsylvania Constitution are reviewed under the same standard as the federal claims, the analysis of the federal claims applies equally to the state-constitution claims, which will therefore not be discussed separately. *See Erfer v. Commonwealth*, 794 A.2d 325, 332 (Pa. 2002) (describing the Pennsylvania Constitution as not providing protection greater than the federal Equal Protection Clause.)

4

*(A) Civil rights claims under § 1983*

Section 1983 creates no substantive rights, but rather provides a remedy for infringement of rights established by other federal laws. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere . . . ."). The statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (West 2010). Recovery under § 1983 requires proving that "a person acting under color of state law" deprived the plaintiff of a "right secured by the Constitution and the laws of the United States." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Cvetko claimed under § 1983 against HE&R and Meals, alleging violations of his First and Fourteenth Amendment rights. The Court dismissed these claims on May 4, 2010, holding that Cvetko had failed to establish that defendants, who are private entities, should be considered state actors. (Doc. 39, at 8–10). In its discussion, the Court noted that the sole factual averment in the complaint at all relevant to state action was the claim that Meals contacted the Derry Township police department on July 7, 2007 and alerted them to Cvetko's protest activities. (*Id.* at 8 (citing Doc. 16, ¶ 24)).

These § 1983 claims fall squarely within the realm of "patently unmeritorious or frivolous" claims that Rule 11 is intended to discourage. Had Mirin conducted a reasonable factual inquiry in this instance, he would have discovered that HE&R, a private corporation, and Robert Meals, a private individual, are not state entities. A reasonable inquiry into the governing law would have revealed that holding private

5

entities liable under § 1983 would require proving "such a close nexus between the State and the challenged actor that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). Mirin should have realized that a phone call to the police, the only relevant factual allegation in the complaint, is not "traditionally the exclusive prerogative of the state," is not indicative of acting "with the help of or in concert with state officials," and does not show "interdependence" between the party making the phone call and the state, thus failing to establish state action under any of the three relevant tests. *Id.* (quoting *Mark*, 51 F.3d at 1142). (*See also* Doc. 39, at 8–10 (providing the Court's analysis of why Cvetko's single allegation fails to show state action).

No one could reasonably believe that calling the police would transform a person or a company into a state actor subject to liability under the Constitution. Under this view, a victim of a robbery alerting law enforcement of the crime would become a state actor. A wife seeking protection from an abusive husband would be considered equivalent to the State itself if she requests that a squad car come to her home. Apparently Mirin failed to recognize the implications of the arguments and claims he was making on Cvetko's behalf. Either Mirin failed to make a reasonable inquiry into the facts and law surrounding Cvetko's constitutional claims, or he failed to come to a reasonable conclusion about the meaning of the applicable law after making an inquiry. It is "patently clear" to the Court, and it should have been to Mirin as well, that Cvetko's § 1983 claims against HE&R and Meals had "absolutely no chance of success." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.3d 191, 194 (3d Cir. 1988) (quoting *Oliveri v. Thompson*, 803 F.3d 1265, 1275 (2d Cir. 1986)).

### (B) Conspiracy claim under § 1985(3)

Section 1985(3) allows a plaintiff to recover for conspiracies intended to violate the plaintiff's civil rights. 42 U.S.C.A. § 1985(3) (West 2010). The statute provides:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of eequal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation.

*Id.* Conspiracy claims under § 1985(3) need not arise from state action. *See United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 832 (1983) (citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971)) (discussing *Griffin*, a case in which § 1985(3) was held to reach a "purely private" conspiracy). However, it is a matter of hornbook law, and well established in the Third Circuit that a plaintiff must plead all elements of a conspiracy, and that neither "a formulaic recitation of the elements" nor "mere[ly] conclusory statements" will suffice. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *United Bhd. of Carpenters & Joiners*, 463 U.S. at 828–29; *Griffin*, 403 U.S. at 102–03) (listing the four elements of a conspiracy under § 1985(3)); *Kalmanovitz v. G. Heilman Brewing Co.*, 595 F.Supp. 1385, 1401 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985) (requiring particularized allegations of conspiracy); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (disapproving of "formulaic recitation[s]"); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Twombly*, at 555) (reiterating the inadequacy of "mere conclusory statements").

As the Court pointed out in its memorandum addressing defendants' motion to dismiss, Cvetko's "sole factual averment merely alleges that Meals reported Cvetko's protest activity to Derry Township police," and fails to include any factual allegations about an agreement, the duration of a conspiracy, or any actions taken in furtherance of a conspiracy. (Doc. 39, at 12.) In lieu of alleging anything else both relevant and factual,

7

Cvetko's complaint contains "vague allegations" with no underpinnings entitled to the presumption of truth. (*Id.* (reviewing some of the disregarded allegations)). A reasonable investigation into the law applicable to § 1985(3) claims would have revealed the hopeless inadequacy of making a claim with the virtually nonexistent support that Cvetko had. Neither the complaint nor Mirin's submissions to the Court on Cvetko's behalf contain a glimmer of a nonfrivolous argument for "extending, modifying, or reversing existing law or for establishing new law," nor any hint that Cvetko's claims "are warranted by existing law." Fed. R. Civ. P. 11(b).

### *(C) General lack of factual grounds for suing defendants*

Cvetko's deposition testimony revealed that there was an unambiguous lack of justification for suing HE&R and Meals. When asked why defendants would have conspired with the Derry Township police, Cvetko stated that it was because he was "costing [the Hershey Company and HE&R] billions of dollars" and they wanted to get rid of him. (Cvetko's Dep. (Doc. 41-6) 143:17–144:8, Apr. 1, 2010.) Not only was he unable to describe any basis for alleging a conspiracy, but he affirmative stated: "I allege. I only allege. I think." (*Id.* 145:6–8.) He continued: "I have no proof." (*Id.* 145:10.)

His testimony made clear that he neither had any intention of suing HE&R and Meals nor knew why they had been named defendants in his complaint. "I had no gripe or beef with [HE&R]," he said, and reiterated: "I have no quarrel with [HE&R]." (*Id.* 171:20–172:4.) He then mused aloud: "Why did they stick their nose in it? . . . I cannot understand what the hell [HE&R] is doing. But if they want to fight, we'll help them out, I'll give them a fight." (*Id.* 172:5–14.) Cvetko had no belief that his arrest was the product of any discriminatory animus; he understood that Meals called the police to report him because he was on the median of the road. (*Id.* 172:24–173:7.) He had been cited just days earlier for being on the median, and was told that he would be arrested if he

8

returned, showing his knowledge that the Derry Township Police had intended to arrest him for being on the median without any input from HE&R. (*Id.* 117:5–18.)

"I was even wondering why we were suing [HE&R]," testified Cvetko. (*Id.* 145:6–7.) "I didn't know a damn thing about it," he said. (*Id.* 145:7–8.) Since Cvetko never had any reason to sue HE&R and never wanted to, one must wonder why he did anyway. "I had no gripe or beef with [HE&R]," testified Cvetko, but continued, "And then I remember Bob [Mirin] saying somethign about [HE&R]." (*Id.* 171:20–22.) He stated that he learned about whatever connection there may have been between defendants and Derry Township only through Mirin. (*Id.* 146:14–24.) Yet Cvetko nonetheless signed the verification of his original complaint. (Doc. 1-3.)

### (D) Sanctions

Cvetko's testimony and the complaint itself indicate that at the time the complaint was filed, neither Cvetko nor Mirin could have reasonably believed that Cvetko had any nonfrivolous claim against HE&R and Meals. By filing objectively frivolous claims in federal court, Cvetko and Mirin violated Federal Rule of Civil Procedure 11. A violation of Rule 11 results in mandatory sanctions. However, a represented party cannot be sanctioned for a violation of Rule 11(c)(2) regarding legal claims. Fed. R. Civ. P. 11(c)(5)(A). Accordingly, since the violative conduct in this case was the filing of frivolous claims, sanctions must be imposed only on Attorney Mirin and not his clelnt.

A monetary sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). This limitation recognizes that the primary purpose of Rule 11 sanctions is deterrence and "correction of litigation abuse," not punishment of the offending party or compensation for the aggrieved party. *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 193–94 (3d Cir. 1988) (quoting, <u>e.g.</u>, *Gaiardo v.*

9

*Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987); citing, *e.g.*, William W. Schwarzer, *Rule 11 Revisited*, 101 Harv. L. Rev. 1013, 1020 (1988)). The sanction imposed should be "the minimum that will serve to adequately deter the undesirable behavior." *Id.* (quoting *Eastway Constr. Corp. v. City of New York*, 637 F. Supp. 558, 565 (E.D.N.Y. 1986)).

Because of the interest in keeping Rule 11 sanctions to the minimum severity necessary, courts are encouraged to consider the imposition of nonmonetary sanctions. Other sanctions that may be appropriate include "publication, an order barring an attorney from appearing for a period of time, reprimand, dismissal of baseless claims or defenses, or even ordering 'the attorney[] who violated the rule to circulate in [his or her] firm a copy of the opinion in which the pleadings were criticized.'" *Id.* at 194 (quoting *Gaiardo*, 835 F.2d at 482).

Courts are also encouraged to take any mitigating factors into account, which may include "the public interest in encouraging particular suits, the conduct of the parties[,] and economic considerations." *Id.* at 197. Other mitigating factors that a court may consider include:

> (1) [T]he attorney's history of filing frivolous actions or alternatively, his or her good reputation; 2) the defendant's need for compensation; 3) the degree of frivolousness, recognizing that causes do lie along a continuum, rather than neatly falling into either the frivolous or nonfrivolous category, and that Congressional intent, in promulgating Rule 11 sanctions, was not to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories; 4) whether the frivolousness also indicated that a less sophisticated or expensive response [by the other party] was required; and 5) the importance of not discouraging particular types of litigation which may provide the basis for legislative and executive ameliorative action when the courts lack power to act.

*Id.* at 197 n.6 (internal quotation marks and citations omitted) (citing, *e.g.*, *Eastway*, 637 F. Supp. at 573; Fed. R. Civ. P. 11, Advisory Comm. Notes; *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080, 1091–92 (3d Cir. 1988)) (alteration in original).

In this case, monetary sanctions are appropriate because the thorough frivolousness of plaintiff's claims, combined with plaintiff's extreme persistence in pursuing them, demonstrates that a mere slap on the wrist will not deter this kind of conduct from recurring. In doggedly trying again and again to breathe life into his stillborn claims, plaintiff has wasted an inordinate amount of other peoples' time, most particularly defendants'. Plaintiff first filed his complaint on July 1, 2009 (Doc. 1), which forced defendants to file a motion to dismiss (Doc. 3) as well as a brief in support (Doc. 4). Plaintiff responded with an amended complaint on August 7, 2009 (Doc. 5), leading the Court to deny defendants' motion to dismiss as moot (Doc. 6), which required defendants to redraft and resubmit their motion to dismiss (Doc. 10).

Apparently still aware that his claims were meatless, scrawny things, plaintiff sought leave to file a second amended complaint (Doc. 14), which the Court granted (Doc. 15), and the second amended complaint (Doc. 16) was filed on September 9, 2009. Once again defendants were obliged to redraft and resubmit a motion to dismiss (Doc. 16). Somehow, plaintiff managed to file a brief in opposition (Doc. 19) to the motion to dismiss before defendants filed their brief in support (Doc. 22), but in any case, defendants also filed a brief in reply to the brief in opposition (Doc. 28). On May 4, 2010, the Court granted defendants' motion to dismiss (Doc. 39). Less than a week later, after having been forced into court for ten months by plaintiff's legal histrionics, defendants filed their present motion for sanctions (Doc. 41) and shortly thereafter their brief in support (Doc. 45). But plaintiff, not yet convinced that his claims were dead as a doornail, sought leave to file a third amended complaint (Doc. 47), requiring defendants to file yet another brief in opposition (Doc. 49). The Court denied plaintiff leave to amend (Doc. 52) on July 20, 2010. At this point, over the course of a full year, defendants had been obligated to file not less than six documents in response to plaintiffs' pleadings and motions, as well as two documents for their motion for sanctions—all over a case that

never had the faintest glimmer of merit, and which was never destined for anything but the dustbin.

**IV. Conclusion**

Having found that plaintiff's counsel Robert S. Mirin should be sanctioned under Federal Rule of Civil Procedure 11, defendants' counsel is ORDERED to file on or before September 15, 2010, a detailed statement of its claim for sanctions. Mr. Mirin may file an objection on or before September 29. Defendants may file a reply within seven days of any objections filed by Mr. Mirin.

s/ William T. Prince  
William T. Prince  
United States Magistrate Judge

August 24, 2010