UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIKE CVETKO, | : | |
|     Plaintiff | : | NO.: 1:09-CV-01260 |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| DERRY TOWNSHIP POLICE | : | |
| DEPARTMENT, BRIAN K. GRUBB, | : | |
| MICHAEL HENRY, TODD HARRER, | : | |
| JOHN DOE, HERSHEY | : | |
| ENTERTAINMENT & RESORTS, and | : | |
| ROBERT MEALS, | : | |
|     Defendants | : | |

## **MEMORANDUM & ORDER**

Now under consideration are the parties' filings concerning appropriate sanctions under Federal Rule of Civil Procedure 11 against plaintiff's counsel, Robert Mirin.

**I. Background**

What follows is a brief overview of the relevant procedural history. Plaintiff Mike Cvetko initiated this action on July 1, 2009, by filing a complaint (Doc. 1), which he amended (Doc. 5) and amended again (Doc. 16), each time in response to motions to dismiss from defendants (Docs. 3, 10). After defendants moved (Doc. 17) to dismiss the second amended complaint and the court granted the motion (Doc. 39), plaintiff moved to amend his complaint for a third time (Doc. 47), which the Court denied (Doc. 52) as failing to cure the defects that led to dismissal before.

Defendants sought sanctions under Rule 11 against both plaintiff Mike Cvetko and his attorney, Robert Mirin, in a motion filed May 10, 2010 (Doc. 41). The Court granted the motion against Mirin on August 24, 2010 (Doc. 61), holding that both Mirin and Cvetko had violated Rule 11, but imposing sanctions only on Mirin. Defendants' counsel

was ordered to file a statement of its claim for sanctions, detailing expenditures on behalf of their clients in connection with the defense to this action, by September 15; counsel did so on this date (Doc. 65). Mirin timely filed an objection to defendants' declaration (Docs. 67, 68) on September 29, and a timely reply brief from defendants followed (Doc. 71) on October 6. On December 8, 2010, Honorable Christopher C. Conner issued an order (Doc. 73) dismissing plaintiff's motion for reconsideration of the order granting sanctions and remanding the matter of determining appropriate sanctions to the undersigned Magistrate Judge.

The matter is now ripe for disposition.

## II. Discussion

Defendants' counsel submitted documentary evidence to show that they incurred a total of $49,346.86 in fees and costs in the course of defending their clients against plaintiff's claims. (Docs. 65, 65-2 to 65-6.) Mirin takes two approaches to challenging this valuation; each will be addressed in turn.

*(A) A plaintiff's "special protection" in civil-rights claims*

Mirin argues that plaintiffs "generally have a special status in civil-rights litigation," which generally affords them protection from defendants' claims for fees, "so as to not instill fear in the hearts of people who have those claims," even if they are weak or ultimately prove unsuccessful. (Doc. 68, at 16.) He bases his argument entirely on *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), a case brought under the Civil Rights Act of 1964, in which the Court held: "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not

2

brought in subjective bad faith." *Id.* at 421.

First, *Christiansburg* is only loosely related to the present case. *Christiansburg* presented a Title VII claim in which defendants prevailed but did not seek Rule 11 sanctions; here, plaintiff's claims were under 42 U.S.C §§ 1983 and 1985(3), and he and Mirin have both already been held to have violated Rule 11. Second, to the extent that *Christiansburg* does apply, it goes completely against the case that Mirin is trying to make. Mirin's filings on behalf of his client have already been found frivolous, and under *Christiansburg*, Mirin's repeated protestations that the claims against defendants were brought in good faith would be of no avail. No less important is the mandate that if Rule 11 is violated, sanctions necessarily follow. *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 83 (E.D. Pa. 1992) (citing *Cooter & Gell*, 496 U.S. 384, 393 (1990); *Perkins v. Gen. Motors Corp.*, 129 F.R.D. 655, 658 (W.D. Mo. 1990); *Matthews v. Freedman*, 128 F.R.D. 194, 206 n.3 (E.D. Pa. 1989)).

### *(B) Hours worked by defendants' counsel*

Mirin correctly notes that the "lodestar" of determining reasonable fees is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Just as billing a client for "excessive, redundant, or otherwise unnecessary" hours violates an attorney's ethical obligation, counsel for a prevailing party has a duty to bill an adversary only for hours "reasonably expended." *Id.* at 434. The lodestar calculation may be adjusted upwards or downwards on the basis of a variety of factors, including the "results obtained." *Id.* at 434 & n.9 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989)).

In the Third Circuit, "[t]he value of an attorney's time generally is reflected in his normal billing rate." *Lindy Bros. Builders, Inc. v. Am. Radiators & Standard Sanitary*

3

*Corp.*, 487 F.2d 161, 167 (3d Cir. 1973). Here, defendants' counsel has submitted evidence showing that the total of 225.8 hours worked by three different attorneys were billed at rates varying from $170 to $260 per hour, with the vast majority of the billing at $205 to $220 per hour. (Young Aff., Sept. 15, 2010, Doc. 65-2, at ¶ 22.)

Mirin has submitted neither argument nor evidence to discredit this valuation of his opposing counsels' time. He points out that the Equal Access to Justice Act limits attorney's fees to $125 per hour, 28 U.S.C. § 2412(d)(2)(A)(ii), but this provision only applies to cases in which the United States is a party. Mirin also cites *Napier v. Thirty or More Unidentified Federal Agents, Emps., or Officers*, 855 F.2d 1080 (3d Cir. 1988), in which the court valued the services of a U.S. attorney at $100 per hour. *Id.* at 1092–93. This case helps Mirin no more than does *Christiansburg* or the Equal Access to Justice Act. First, the *Napier* court was presented with the unusual question of having to determine an hourly rate for a U.S. attorney, when U.S. attorneys are salaried rather than paid hourly. *Id.* at 1092. Second, the court's approval of a $100 hourly rate was made in 1988 for services rendered in 1986 and 1987. *See id.* at 1084–85 (describing the litigation underlying the United States' claim for sanctions under Rule 11). One hundred dollars in 1986 translates to about $195 in 2009 dollars, which is not greatly different from the $216 average hourly rate that defendants' counsel billed. *See* Bureau of Labor Statistics, U.S. Dept. of Labor, *CPI Inflation Calculator*, http://data.bls.gov/cgi-bin/cpicalc.pl (last visited Dec. 17, 2010) (providing a method of calculating the relative value of U.S. dollars across different years). (*See also* Doc. 65-2, at ¶ 22–23 (reporting that the 225.8 hours were billed at a total of $48,932).)

### (1) Rounding of billable hours to increments of 0.2

Mirin objects to defendants' counsel's practice of rounding their billed time to intervals of 0.2 hours, and suggests that their bill would decrease by $949 if "the .20

4

hours of work declared on various items is minimally decreased to a more appropriate .10 hours." (Doc. 68, at 18.) Mirin's objection is unpersuasive. It is standard practice in the profession to estimate hours worked, and "[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted." *Lindy Bros. Builders, Inc. v. Am. Radiators & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973).

### (2) Starting point for calculation of entitlement to fees

According to Mirin, any fees to which defendants would be entitled should be calculated starting after defendants returned discovery responses rather than with the filing of the complaint, because Cvetko and Mirin "were unable to meaningfully investigate the claims before filing the Complaint and pursuing discovery." (Doc. 68, at 18.) This argument is baffling. Not only does Mirin present no reason that he was unable to conduct a meaningful investigation prior to filing the complaint, but Rule 11(b) indicates that "[b]y presenting to the court a pleading, written motion, or other paper," an attorney "certifies that to the best of the person's knowledge, information, and belief, formed *after an inquiry reasonable under the circumstances*," the claims are warranted and the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b) (emphasis added). Mirin's failure to conduct a reasonable investigation before filing the original complaint is inexcusable, and his argument against the imposition or valuation of sanctions against him contains an explicit admission that he violated Rule 11.

### (3) Number of hours billed

Mirin asserts that defendant's counsels' number of hours billed must be overstated because he himself spent less time on the litigation:

> Lastly, Cvetko's Counsel has not expended half the amount of time asserted by HE&R in its "partial" submission. Cvetko respectfully submits that because Cvetko has the burden of proof in this matter, Cvetko's time expended should be much greater than that of HE&R.

(Doc. 68, at 19.) The Court readily agrees that Cvetko and Mirin should have spent a "much greater" amount of time in their submissions to the Court, if indeed they felt compelled to submit anything. Mirin's statement that he worked fewer hours pursuing Cvetko's case than defendants' counsel spent defending against it does not imply that defendants' counsel overbilled.

### (C) Final valuation of fees and costs

Although Mirin has not made any successful arguments against the imposition of sanctions or for their reduction, defendants' sum of all the time spent working on Cvetko's case is not conclusive of an appropriate amount of sanctions:

> Compiling raw totals of hours spent, however, does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time. Similarly, no compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail.

*Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980).

In the interest of equitable concerns, courts may consider the imposition of nonmonetary sanctions. Other sanctions that may be appropriate include "publication, an order barring an attorney from appearing for a period of time, reprimand, dismissal of baseless claims or defenses, or even ordering 'the attorney[] who violated the rule to circulate in [his or her] firm a copy of the opinion in which the pleadings were

criticized.'" *Id.* at 194 (quoting *Gaiardo*, 835 F.2d at 482).

Courts are also encouraged to take any mitigating factors into account,[1] which may include "the public interest in encouraging particular suits, the conduct of the parties[,] and economic considerations." *Id.* at 197. Other mitigating factors that a court may consider include:

> (1) [T]he attorney's history of filing frivolous actions or alternatively, his or her good reputation; 2) the defendant's need for compensation; 3) the degree of frivolousness, recognizing that causes do lie along a continuum, rather than neatly falling into either the frivolous or nonfrivolous category, and that Congressional intent, in promulgating Rule 11 sanctions, was not to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories; 4) whether the frivolousness also indicated that a less sophisticated or expensive response [by the other party] was required; and 5) the importance of not discouraging particular types of litigation which may provide the basis for legislative and executive ameliorative action when the courts lack power to act.

*Id.* at 197 n.6 (internal quotation marks and citations omitted) (citing, *e.g.*, *Eastway*, 637 F. Supp. at 573; Fed. R. Civ. P. 11, Advisory Comm. Notes; *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080, 1091–92 (3d Cir. 1988)) (alteration in original).

In the exercise of discretion, and keeping in mind the exhortation in the Federal Rules that a monetary sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(4), the Court elects to impose a monetary sanction of $10,000. Although this amount is only some twenty percent of the fees for which defense counsel submitted documentation in connection with its motion for sanctions, the purpose of Rule 11 is neither remuneration for the moving party nor punishment for the party being

---

[1] Although the Memorandum and Order granting defendants' motion for sanctions listed several mitigating factors that Mirin might have highlighted as grounds for reducing the amount of any monetary sanctions (Doc. 61, at 10), he opted against discussing any of them.

7

sanctioned. A sanction of $10,000 is sufficient to send a stern message to Mr. Mirin—as well as any others who might be poised to effect "comparable conduct"—that the filing of patently meritless claims in the federal courts of the United States is not acceptable. The ability to access the courts system may be a right, but the right can be abused—and in the interest of ensuring that claims with merit, put forward on a good-faith basis, can be adjudicated with all possible efficiency, abusive conduct must be resolutely discouraged.

### III. Conclusion

It is therefore ORDERED that Robert S. Mirin, Esq., Pennsylvania Attorney ID #25305, remit the sum of $10,000 on or before Monday, January 31, 2011, to defense counsel. On or before Monday, December 27, 2010, defense counsel shall inform Mr. Mirin of its preferred method of receiving payment and the appropriate addressee.

s/ William T. Prince  
William T. Prince  
United States Magistrate Judge

December 20, 2010